

2010 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-7-2010

# Countryway Ins Co v. Walter Slaugenhoup

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1677

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2010

Recommended Citation

"Countryway Ins Co v. Walter Slaugenhoup" (2010). *2010 Decisions*. Paper 2099.
http://digitalcommons.law.villanova.edu/thirdcircuit_2010/2099

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2010 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-1677

COUNTRYWAY INSURANCE COMPANY,
Appellant

v.

WALTER P. SLAUGENHOUP; WALTER C. SLAUGENHOUP;
DUSTIN C. SAMS, an incapacitated person by JULIE L. RAYBUCK,
his guardian

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court  No. 07-cv-01593
District Judge: The Honorable Arthur J. Schwab

Argued October 27, 2009

Before: SMITH, FISHER, and STAPLETON, *Circuit Judges*

(Filed: January 7, 2010 )

Louis C. Long, Esq.  (Argued)
Martha S. Helmreich, Esq.
Pietragallo Gordon Alfano Bosick & Raspanti LLP
One Oxford Center, 38th Floor
Pittsburgh, PA 15219
*Counsel for Countryway Insurance Company*

Robert J. Donahoe, Esq. (Argued)
4800 Library Road
Bethel Park, Pennsylvania 15102

*Counsel for Dustin C. Sams, by Julie L. Raybuck, his guardian*

---

OPINION

---

SMITH, *Circuit Judge.*

In this declaratory judgment action, the District Court held that appellant Countryway Insurance Co. ("Countryway") had a duty to defend its insured, Paul Slaugenhoup, in a negligence lawsuit brought by Dustin C. Sams ("Sams") against Paul and his father, Walter Slaugenhoup.[1] Countryway appeals. We will reverse.

I.

Paul Slaugenhoup was the owner of a farmowner's insurance policy issued by Countryway. His policy provided personal liability coverage, under which Countryway agreed to defend Paul in lawsuits seeking damages for bodily injury or property damage, provided that coverage was not otherwise excluded by the policy.

Paul and his father Walter were joint owners of a combine used on the Slaugenhoup farm. On July 17, 2006, Paul and Walter set out to repair a tire on their combine. Paul removed the tire, loaded it onto Walter's pickup truck, and told his father to "go get her fixed." Walter was 93 years old, had a history of glaucoma, and was not wearing his glasses despite a driver's license requirement that he wear corrective lenses when operating a motor vehicle. As Walter drove to get the tire fixed, his vehicle

---

[1] The father's name is Walter C. Slaugenhoup and the son's given name is Walter P. (Paul) Slaugenhoup. For ease of reference, we will refer to the father as "Walter" and the son as "Paul."

collided with Sams's vehicle. Sams was severely injured.

Through his guardian, Sams filed a two-count complaint against the Slaugenhoups in the Court of Common Pleas for Clarion County, Pennsylvania. Count I alleged that Walter operated his motor vehicle negligently. Count II alleged that Paul was negligent under § 302 of the Restatement (Second) of Torts, which provides that "an act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the negligent or reckless conduct of the other or a third person." According to Sams, Paul was negligent when he placed the tire in Walter's pickup truck and asked Walter to transport the tire for repair, knowing that his father was incapable of driving safely.

On November 21, 2007, Countryway filed a declaratory judgment action pursuant to 28 U.S.C. § 2201 in the United States District Court for the Western District of Pennsylvania.[2] Countryway sought a declaration that it had no duty to defend or indemnify Paul in the negligence action brought by Sams, because Exclusion 1(f) of Paul's policy excluded coverage for that claim. The District Court held that Countryway had a duty to defend Paul under the policy, and granted summary judgment for the Slaugenhoups and Sams. Countryway filed this timely appeal.[3]

---

[2] The District Court had diversity jurisdiction under 28 U.S.C. § 1332(a)(1).

[3] This Court has jurisdiction under 28 U.S.C. § 1291.

II.

This Court exercises plenary review over the District Court's grant of summary judgment. *Camiolo v. State Farm*, 334 F.3d 345, 354 (3d Cir. 2003). Furthermore, the interpretation of an insurance exclusion is a question of law, over which this Court exercises plenary review. *Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F.3d 431, 434 (3d Cir. 2006). The parties agree that Pennsylvania substantive law applies.

III.

Paul Slaugenhoup's policy provided personal liability coverage ("coverage L"), subject to certain exclusions. Exclusion 1(f), the only exclusion at issue in this appeal, states that coverage L does not apply to:

> "bodily injury" or "property damage" which results from liability imposed by law on an "insured" for the use of a "motorized vehicle," aircraft, or watercraft, except if coverage is provided for by an Incidental Motorized Vehicle or Watercraft Coverage.[4]

The District Court found this exclusion ambiguous, and therefore interpreted it in favor of coverage. The District Court offered three reasons for its conclusion that Exclusion 1(f) was ambiguous. First, it thought it unclear whether Paul "used" the pickup truck involved in the accident, since he neither owned nor operated it at any time relevant to the accident. Second, the District Court believed that the policy was unclear as to whose "use" of a vehicle would trigger the exclusion, and whether the exclusion applied

---

[4] The parties agree that no coverage is provided by an Incidental Motorized Vehicle or Watercraft Coverage.

4

in cases of vehicle use by anyone other than the insured. Third, the District Court distinguished Exclusion 1(f) from the exclusions in other cases in which Pennsylvania courts had applied motor vehicle exclusions in general liability policies. *See Wilcha v. Nationwide Mut. Fire Ins. Co.*, 887 A.2d 1254 (Pa. Super. Ct. 2005); *Erie Ins. Exch. v. Transamerica Ins. Co.*, 507 A.2d 389 (Pa. Super. Ct. 1986); *Pulleyn v. Cavalier Ins. Corp.*, 505 A.2d 1016 (Pa. Super. Ct. 1986). The Court pointed out that the exclusions applied in *Wilcha, Erie,* and *Pulleyn* excluded coverage for bodily injury "arising from" or "arising out of" motor vehicle use, while the Countryway exclusion contained no such "arising from" language. The District Court held that the absence of such language contributed to the policy's ambiguity.

The District Court was correct that under Pennsylvania law, ambiguities in an insurance policy are to be construed against the insurer. *401 Fourth St., Inc. v. Investors Ins. Group.*, 879 A.2d 166, 171 (Pa. 2005). That rule is inapplicable here, however, because Exclusion 1(f) is not ambiguous.

The District Court erred in asking as a threshold question whether Paul Slaugenhoup used a motor vehicle. The Court should have first asked whether the exclusion even required that the insured "use" the motorized vehicle. In our view, it does not. Exclusion 1(f) states that the policy does not provide coverage for bodily injury resulting from (1) liability imposed by law (2) on an insured (3) "for the use of a motorized vehicle." All three of those requirements are met here. The Sams negligence action sought to (1) impose liability through law (2) on Paul, the insured (3) "for the use"

5

of the pickup truck.  The "use" in question, of course, was Walter's use of his pickup truck to transport the tire, which resulted in the accident and without which Sams would have no claim against Paul.  As Countryway notes, the operative word in the exclusion is "use."  Walter was *using* a motor vehicle when he struck and injured Sams, and that use was sufficient to trigger Exclusion 1(f).   Nothing in the policy states that Exclusion 1(f) applies only to *Paul*'s use of a vehicle.  Because there is no need to decide whether Paul used the pickup, one of the chief sources of ambiguity identified by the District Court vanishes.

The District Court correctly noted that "the policy language begs the question of who must be using the vehicle in order for coverage to be excluded."  The Court thought that the policy's failure to identify whose use of a vehicle would trigger the exclusion also suggested that the exclusion is ambiguous.  We disagree.  A more natural reading of the policy is that Countryway did not identify a specific person whose vehicle use would trigger the exclusion because it did not intend to limit the exclusion based on the identity of the user.  Rather, it meant to exclude all coverage for liability imposed by law as the result of motor vehicle use – by anyone.  *See, e.g.*, *Hanson v. Northstar Mut. Ins. Co.*, 71 F. Supp. 2d 1007, 1014 (D.S.D. 1999) (interpreting nearly identical motor vehicle exclusion to exclude coverage, when the insured loaned an ATV to a young woman whose use of the ATV resulted in injuries and led to a lawsuit against the insured).

The District Court's analysis effectively rewrites the policy to exclude "bodily injury . . . which results from liability imposed by law on an insured for the use of a

6

motorized vehicle *by the insured*." The exclusion could have been written to say just that, but it was not. Notably, other exclusions in the policy *are* explicitly limited to the actions of the insured, while Exclusion 1(f) is not. For example, Exclusion 1(c) excludes coverage for "bodily injury . . . which results from the ownership, operation, maintenance, [or] use . . . of motorized vehicles . . . *owned or operated by* or rented to or loaned to *an insured*" (emphasis added). Similarly, Exclusion 1(j) applies to "bodily injury . . . which is expected by, directed by, or intended *by the insured*; or that is the result of intentional and malicious acts *of the insured*" (emphasis added).

Clearly, Countryway knew how to limit an exclusion to the actions of the insured when it intended to do so. The presence of such limiting language in other exclusions, coupled with its absence from Exclusion 1(f), demonstrates that Exclusion 1(f) was not intended to be so limited. Reading the phrase "by the insured" into Exclusion 1(f) would be inconsistent with Pennsylvania law, which honors the intent of the parties evidenced by the language of the contract. *See, e.g., Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999) (where "the language of a contract is clear and unambiguous, a court is required to give effect to that language . . . [and must not] distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity").[5]

_____

[5] The District Court also overstated the significance of the absence of "arising from" language. It assigned great weight to the fact that, unlike the exclusions in *Pulleyn*, *Erie*, and *Wilcha*, the Countryway exclusion did not contain the words "arising from" or "arising out of." The District Court implied that the presence of those words in *Pulleyn*, *Erie*, and *Wilcha* was somehow central to those courts' analyses. It was not. None of

7

Attempting to escape the plain language of Exclusion 1(f), Sams insists that his negligence claim against Paul is not connected to any "use" of a motor vehicle. Sams emphasizes that he has not asserted claims against Paul for vicarious liability, negligent entrustment, or negligent supervision of Walter's use of the pickup. Instead, he limits his negligence allegations against Paul to two specific acts: placing the tire in Walter's truck, and requesting Walter to drive the tire for repair. Neither of those acts, Sams argues, implicates the use of a motor vehicle, and therefore neither falls within the exclusion.

Pennsylvania courts interpreting motor vehicle exclusions have faced similar arguments in negligent entrustment cases, and have consistently rejected attempts to divorce allegations of negligent entrustment from the excluded "use" of a vehicle that actually causes the plaintiff's injuries. *See, e.g.*, *Pulleyn*, 505 A.2d at 1020. In *Pulleyn*, a man driving his employers' vehicle crashed into another vehicle and killed two of the passengers. The victims' family sued the employers for negligent entrustment of their vehicle. The issue was whether the employers' insurer was required to defend them in light of the motor vehicle exclusion in their liability policy, which excluded "bodily injury or property damage arising out of the ownership . . . operation, [or] use . . . of any other automobile or aircraft operated by any person in the course of his employment by any insured." *Id.* at 1018. The victims argued that this exclusion did not preclude coverage for their negligent entrustment claim because the entrustment was separate and distinct

<hr>

those cases turned on the "arising from" language in the policies. The presence of "arising from" language may be *sufficient* for an insurer to effect a broad motor vehicle exclusion, but there is no suggestion in any of those cases that it is *necessary* to do so.

8

from the use of the vehicle that had caused their injury. The court rejected that distinction and held that the policy excluded coverage for the negligent entrustment claim, because "liability giving rise to the tort is not actually triggered until the motor vehicle is used in a negligent manner resulting in injury." *Id.* at 1020 (quoting *Mich. Mut. Ins. Co. v. Sunstrum*, 315 N.W.2d 154, 157 (Mich. Ct. App. 1981)). It was not the *entrustment* of the vehicle to the employee, the court reasoned, but the employee's use of the vehicle that gave rise to the insured's alleged liability. *Id.* at 1020.

Other Pennsylvania cases involving motor vehicle exclusions have similarly rejected attempts to separate allegations of negligent entrustment from the use of the vehicle that caused injury. *See, e.g.*, *Erie*, 507 A.2d at 394 (rejecting the view that "negligent entrustment of the automobile" is "separate from the use of the vehicle" and holding that motor vehicle exclusion in a homeowner's policy excluded coverage for negligent entrustment claim); *Wilcha*, 887 A.2d at 1259 (holding that a homeowner's policy excluding coverage for "bodily injury . . . arising out of the ownership, maintenance, or use of a motor vehicle" owned or operated by an insured also excluded coverage for a negligent entrustment claim, because "the use of the vehicle [was] an integral part of the tort of negligent entrustment").[6]

---

[6] *Accord Bankert v. Thresherman's Mut. Ins. Co.*, 329 N.W.2d 150, 156 (Wis. 1983). In *Bankert*, the court held that a homeowner's policy excluding coverage for the "ownership, operation, maintenance or use of automobiles while away from the insured premises" did not provide coverage for a negligent entrustment claim when the alleged negligence entrustment occurred on the premises but the injury occurred away from home. The court refused to separate the negligent entrustment from the actual "use" that caused the injury, because "the parents' acts could not render them liable without their

9

Admittedly, *Pulleyn*, *Erie*, and *Wilcha* are distinguishable in that they involved allegations of negligent entrustment. Here, there is no allegation of negligent entrustment, nor could there be, since Walter was driving his own truck at the time of the accident. Nevertheless, we believe that the reasoning employed in those cases forecloses Sams's attempts to separate his negligent delegation allegations from the use of the vehicle that actually gave rise to his claims. Here, Walter's use of the pickup truck is "integral" to Sams's allegations against Paul, *Wilcha*, 887 A.2d at 1259, just as the use of the vehicle was integral to the negligent entrustment claims in *Pulleyn*, *Erie*, and *Wilcha*. As in those cases, there could be no negligence claim against the insured but for someone's – *i.e.*, Walter's – "use" of a motor vehicle.

### IV.

An insurance policy is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Hutchison v. Sunbeam Coal Co.*, 519 A.2d 385, 390 (Pa. 1986). Exclusion 1(f) is not ambiguous. It excludes coverage for liability imposed by law resulting from the use of a motorized vehicle, regardless of whose use of the motor vehicle caused the bodily injury. Sams's lawsuit clearly seeks to impose liability on Paul "for the use" of a motorized vehicle – specifically, the use of a pickup truck by Walter. Therefore, coverage is excluded, and Countryway has no duty to defend.

We will reverse the order of the District Court granting summary judgment for the

---

son's operation of the vehicle." *Id.*

10

Slaugenhoups and Sams. The case will be remanded, and the District Court is instructed to enter judgment in favor of Countryway.

_____

FISHER, *Circuit Judge*, dissenting.

I write separately to express disagreement with my colleagues' conclusion that Exclusion 1(f) is not ambiguous. I agree the majority applied the correct Pennsylvania law governing contract interpretation, but its holding is incorrect. I believe Exclusion 1(f) is ambiguous, as it is subject to two reasonable interpretations. Further, the majority's analysis of the relevant case law, while thorough, relies on cases where the underlying negligence claim is for negligent entrustment. As the underlying cause of action in the instant case is for negligent supervision, and not for negligent entrustment, I do not agree with the conclusions drawn from those cases. Therefore, I would affirm the District Court's finding that Exclusion 1(f) is ambiguous and that the ambiguity should be construed in favor of the insured, thereby requiring coverage.

The question of an ambiguity "is not a question to be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999). The exclusion in question here has two equally reasonable meanings.

First, the exclusion can reasonably be read to exclude liability for any injury caused as a result of the use of a motor vehicle. This interpretation allows for anyone, not only the insured, to be operating the vehicle in order for the exclusion to apply. Second, it is reasonable to interpret the clause as requiring that the "insured," in this case Paul, be the one using the motor vehicle, either through ownership or actual physical use. Under this reading, the insured would have to have some type of connection to the motor vehicle at issue.

11

The ability to read Exclusion 1(f) in two different, yet equally reasonable, ways leads me to the conclusion that the clause is indeed ambiguous. While we are bound to interpret a policy to avoid ambiguities, not to find them, neither interpretation of the policy language violates this principle. *City of Erie v. Guaranty Nat'l Ins. Co.*, 109 F.3d 156, 162-64 (3d Cir. 1997). Rather, each has equal merit and comes directly from the text of the exclusion.

In brushing aside Sams' assertion that Exclusion 1(f) does not apply because his negligence claims against Paul do not involve a motor vehicle, the majority relies on cases applying the doctrine of negligent entrustment. Sams' complaint does not seek to hold Paul liable for negligent entrustment, but for (1) placing the tire in his father's truck, and (2) requesting his father to transport the tire for repair. Sams does not seek to hold Paul liable for his use of a motor vehicle, but only for negligently allowing his father to transport a tire.

Negligent entrustment, by its very definition, will always connect an insured to the motor vehicle in question.[7] The insured in these negligent entrustment cases always owned, controlled, or employed the motor vehicle that caused the harm. If the insured did not have one of these relationships to the vehicle, there could be no claim of negligent entrustment. Transposing the legal conclusions from these cases onto a case involving negligent supervision or delegation under § 302A of the Restatement (Second) of Torts is plainly incorrect. The opinion goes as far as to acknowledge that "there is no allegation of negligent entrustment, nor could there be, since Walter was driving his own truck at the time of the accident." Majority Op. at Part III. The majority, in spite of this acknowledgment, nevertheless relies heavily on the reasoning in these factually distinguishable cases.

---

[7]Restatement (Second) of Torts § 308 provides: "It is negligent to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should have known that such person intends or is likely to use the thing or conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others."

The majority further relies on Exclusions 1(c) and 1(j) to support its conclusion that Exclusion 1(f) is not ambiguous. The opinion asserts that the language in these exclusions demonstrates that "Countryway knew how to limit an exclusion to the actions of the insured when it intended to do so," but chose not to include such language in Exclusion 1(f). Majority Op. at Part III. I find this reasoning unconvincing. Exclusion 1(c) excludes coverage for "bodily injury . . . which results from the ownership, operation, maintenance, [or] use . . . of motorized vehicles . . . owned or operated by or rented to or loaned to an insured." The majority emphasizes that this exclusion includes the "owned or operated" language and that Exclusion 1(f) does not. Exclusion 1(c) is, in fact, designed specifically to address claims of negligent entrustment against the insured. Negligent entrustment requires control over another person or item. Thus, the very definition of negligent entrustment dictates that the "owned or operated" language in this clause is required to give it effect. If Countryway wished to exclude coverage for negligent entrustment, it had no choice but to include the "owned or operated" language. This is no indication that Countryway made a conscious decision not to limit Exclusion 1(f) to apply only to the insured's use of a motor vehicle. Further, Exclusion 1(j) applies to "bodily injury . . . which is expected by, directed by, or intended by the insured; or that is the result of intentional and malicious acts of the insured." The majority emphasizes that this exclusion contains "by the insured" as limiting language. I find this not to be language of limitation but, rather, language of identification. I am unconvinced that either of the above mentioned exclusions are indicative of Countryway choosing not to limit Exclusion 1(f) only to the actions of the insured.

In sum, Exclusion 1(f) can be interpreted in two reasonable ways. First, the exclusion can be read to disclaim coverage any time a motor vehicle is involved in causing liability to be imposed on the insured, regardless of the insured's use of or control over the vehicle. Second, the exclusion can be read to apply only when the insured is the person "using" the motor vehicle, either through physical use, ownership, or control over the user of the vehicle. As such, Exclusion 1(f) is ambiguous and the ambiguity of the Exclusion

13

should be construed against the insurer and in favor of the insured, thereby providing coverage. For this reason, I would affirm the order of the District Court granting summary judgment for the Slaugenhoups and Sams on Countryway's Declaratory Judgement action.